IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHAPMAN CONSTRUCTION, LC, a Utah limited liability company, and UNITED FIRE & CASUALTY COMPANY,<br><br>Plaintiffs,<br>v.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-00172-DB<br><br>District Judge Dee Benson |

Before the Court are three motions stemming from the Court's grant of summary judgment (Dkt. No. 59) in favor of the Plaintiffs, Chapman Construction ("Chapman") and United Fire & Casualty ("United Fire"). First, Defendant, The Cincinnati Insurance Company ("Cincinnati"), has filed a Rule 59(e) motion for the Court to amend or alter its prior order granting Plaintiffs' summary judgment motion. (Dkt. No. 64.) Alternatively, Cincinnati asks the Court for clarification on how the Court allocated 3/7ths of Chapman's defense costs to Cincinnati. Second, Plaintiffs have filed separate motions asking the Court for an award of attorney's fees against Cincinnati. (Dkt. Nos. 60, 61.) Finally, United Fire is seeking an entry of judgment and prejudgment interest on Chapman's defense costs allocable to Cincinnati. (Dkt. No. 62.) Having reviewed the parties' briefs and the relevant law, the Court renders the following Memorandum Decision and Order.

## Background

Chapman held general commercial liability insurance with United Fire for the policy period of June 27, 2005 to June 27, 2009 and with Cincinnati for the policy period of June 27,

2009 to June 27, 2012.  (Dkt. No. 58, p. 1–2.)  In 2000, Chapman was retained as a general contractor for a Wyndham Resort condominium project.  (*Id.* at 2.)  After completion of the project, Wyndham allegedly discovered defects and subsequently sued Chapman on December 24, 2009 ("Wyndham Lawsuit").  *Wyndham Resort Dev. Co., f/n/a Trendwest Resort, Inc. and Worldmark the Club v. Tawa Dev., LLC and Chapman Construction, LLC*, Utah Fifth Judicial District, Case No. 090503852.

United Fire agreed to defend Chapman in the Wyndham Lawsuit.  (Dkt. No. 58, p. 2.)  Cincinnati initially denied coverage to Chapman because Cincinnati believed the "loss took place prior to and outside [the] policy period."  (Dkt. No. 20-7.)  Later, Cincinnati cited the "known loss" provision in its policy as a source of denying Chapman coverage.  (Dkt. No. 34, p. 5–6.)  United Fire and Chapman brought suit against Cincinnati seeking a declaratory judgment that Cincinnati had a duty to defend Chapman.  (Dkt. No. 2.)  Additionally, United Fire claimed it was entitled to equitable contribution from Cincinnati for the defense costs United Fire had incurred defending Chapman. (*Id.*)

On April 4, 2015, Chapman and United Fire motioned for summary judgment. (Dkt. No. 20.)  On May 28, 2015, Cincinnati filed a motion for summary judgment (Dkt. No. 34) and two motions to strike Plaintiffs' reply memoranda.  (Dkt. Nos. 38, 48.)  On August 25, 2015, the Court held a hearing on the motions.

On September 22, 2015, the Court granted Plaintiffs' motion for summary judgment ("Order").  (Dkt. No. 48.)  The Court held that Cincinnati had a duty to defend Chapman because Cincinnati failed to "demonstrate that Chapman was aware of *all* of the damage alleged in the [Wyndham Lawsuit] prior to the Cincinnati Policy period." (*Id.* at 4.)  Further, the Court held under Utah's "time on the risk" doctrine that Cincinnati was responsible for 3/7ths of the

reasonable defense costs relating to the Wyndham Lawsuit. (*Id.* at 5.) The Court reasoned, "United Fire's policy extended for four years, and Cincinnati's policy extended for three years. Thus, according to the formula set forth in *Ohio Casualty*, Cincinnati is responsible for equitable contribution in the amount of 3/7ths of the reasonable defense costs in the [Wyndham Lawsuit]." (*Id.*)

<u>**Discussion**</u>

**I. Cincinnati's Rule 59(e) Motion**

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, a party may move to "alter or amend a judgment" by filing a motion within 28 days of the entry of judgment. "Motions to alter or amend judgment are regarded with disfavor." *Kerber v. Qwest Group Life Ins. Plan*, 727 F. Supp. 2d 1076, 1077 (D. Colo. 2010). A Rule 59(e) motion will be granted only if the moving party can show: "'(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice.'" *Monge v. RG Petro-Mach. Group Co. LTD*, 701 F.3d 598, 611 (10th Cir. 2012) (citing *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012)). Importantly, Rule 59 is not intended to provide litigants with a "second bite at the apple." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001). Accordingly, "[w]here Rule 59(e) motions are merely being pursued 'as a means to reargue matters already argued and disposed of . . . such motions are not properly classifiable as being motions under Rule 59(e)' and must therefore be dismissed." *Am. Independence Mines & Minerals Co. v. USDA*, 733 F. Supp. 2d 1241, 1259–60 (D. Idaho 2010) (citations omitted).

Applying these principals to Cincinnati's Rule 59(e) motion, the Court finds that Cincinnati has failed to invoke any basis on which Rule 59(e) would give this Court discretion to reconsider its Order. Cincinnati faults the Court for failing to recognize the three distinct

coverage terms Cincinnati extended to Chapman—2009 Coverage Term, 2010 Coverage Term, and 2011 Coverage Term. (Dkt. No. 64, p. 6–8.) Cincinnati argues that the only policy triggered by the Court's holding is the 2009 Coverage Term; thus relieving Cincinnati from liability under the 2010 and 2011 Coverage Terms. (*Id.* at 9.)

Cincinnati's Rule 59(e) arguments are similar to the arguments Cincinnati presented during briefing on Plaintiffs' summary judgment motion (Dkt. No. 32) and during oral argument.[1] The Court disagreed with Cincinnati's interpretation of its policy when the Court granted Plaintiffs' motion for summary judgment. Specifically, the Court heard and rejected Cincinnati's attempt to bifurcate its policy in order to avoid coverage. *See supra* note 1. Cincinnati's Rule 59(e) motion merely reargues matters already considered and "disposed of" by the Court; therefore, Cincinnati's Rule 59(e) motion is improper and is DENIED.

## II. Plaintiffs' Motion for Attorney's Fees

Chapman and United Fire have filed separate motions seeking attorney's fees from Cincinnati for the fees incurred in bringing a declaratory action against Cincinnati. (Dkt. Nos. 60, 61.) Plaintiffs argue that Utah law permits Plaintiffs to recover consequential damages, including reasonable attorney's fees, for Cincinnati's breach of both the express terms of the insurance contract and Cincinnati's implied duty to act fairly and in good faith with Chapman. (*See* Dkt. No. 60, p. 6.)

Under Utah law, if an insurer breaches an insurance contract, the insured is entitled to general and consequential damages. *Beck v. Farmers Ins. Exchange*, 701 P.2d 795, 800 (Utah

---

[1] *See* Dkt. No. 32, p. 32 ("Cincinnati acknowledges that it issued *a single three year policy* and *not three separate* one year policies. However, for purposes of allocation, this should make no difference. The manifestation of damages and/or knowledge of those damages marks the end date for allocation purposes. Policies or policy periods in effect after that *date should not be implicated*." (emphasis added)); Trans. 27:17-28, 28:1–17 ("[T]here is no question that the lawsuit was filed within that first coverage term, so at most we would be looking at the *first coverage term which is a one-year period*." (emphasis added)).

1985). Consequential damages include damages that are "reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made." *Id.* at 801. "[C]onsequential damages for breach of contract may reach beyond the bare contract terms." *Id.* However, in the context of attorney's fees, the Utah Supreme Court has limited the availability of attorney's fees to circumstances "where there has been a breach of the implied covenant of good faith and fair dealing." *Saleh v. Farmers Ins. Exchange*, 2006 UT 20, ¶ 25, n.4, 133 P.3d 428 (rejecting the plaintiff's contention that "attorney fees are available for a simple breach of an insurance contract").[2] Therefore, for the Plaintiffs to recover attorney's fees, Plaintiffs must show Cincinnati acted in bad faith.

The contractual nature of an insurance relationship imposes a duty on an insurer to "perform a[n] . . . insurance contract in good faith." *Beck*, 701 P.2d at 801. The "implied obligation of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim." *Id.* Utah Courts have permitted an award of attorney's fees in a declaratory judgment action if it appears "that the insurance company acted in bad faith or fraudulently or was stubbornly litigious." *Am. States Ins. Co., Western Pac. Div. v. Walker*, 486 P.2d 1042, 1044 (Utah 1976). However, "when an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so." *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996). "Whether an insured's claim is fairly debatable under a given set of facts is . . . a question of law." *Id.* at 464.

---

[2] *See also Beach House Club v. Travelers Property Cas. Co. of Am.*, Civ. No. 2:08-cv-287, 2009 WL 3580058, at *2 (D. Utah Oct. 30, 2009) (citing *Saleh*, the court held, "attorney fees are not included a consequential damages for a breach of the insurance contract"); *Borandi v. USAA Casualty Ins. Co.*, Civ. No. 2:13-cv-141, 2015 WL 710887, at *2 (D. Utah Feb. 18, 2015) (citing *Saleh* for the proposition that attorney's fees are only available to an insured upon a showing of bad faith).

The Court finds that Chapman's claim for coverage was fairly debatable; therefore, Cincinnati did not act in bad faith as a matter of law. Initially, Cincinnati believed it could deny coverage to Chapman because the "loss took place prior to and outside [the] policy period." (Dkt. No. 20-7.) Additionally, before this Court, it has been Cincinnati's position that if the insured has knowledge, "in whole or in part" prior to the coverage term, Cincinnati was not required to defend the insured. (Dkt. No. 58, p. 4.) Based on Cincinnati's interpretation of its policy and the timing of the Wyndham Lawsuit, Cincinnati declined to defend Chapman. Ultimately, the Court disagreed with Cincinnati's interpretation of its policy. (Dkt. No. 58.) However, the Court's disagreement with Cincinnati does not amount to Cincinnati acting in bad faith. *See Jones v. Farmers Ins. Exchange*, 2012 UT 52, ¶ 7, 286 P.3d 301.

Moreover, Plaintiffs fault Cincinnati for the delay in defending Chapman; however, it was the Plaintiffs that waited over three years from Cincinnati's final denial of coverage to seek the retendering of Chapman's defense. (Dkt. Nos. 20-7, 20-8.) If anything, Plaintiffs delay in pursuing Cincinnati is an indication that Plaintiffs believed Cincinnati had plausible grounds for denying Chapman coverage. Cincinnati did not act in bad faith; therefore, Plaintiffs' motions for attorney's fees are DENIED.

## III. United Fire's Motion for Entry of Judgment and Prejudgment Interest

United Fire's motion for prejudgment interest argues that Utah Code Ann. § 15-1-1(2) permits United Fire to receive 10% per annum of prejudgment interest for the defense costs paid on Cincinnati's behalf. (Dkt. No. 62.) Cincinnati counters that prejudgment interest is not warranted in this case and, alternatively, if prejudgment interest is awarded, § 15-1-1 is not applicable to United Fire's equitable claim. (Dkt. No. 69.) United Fire's motion presents two issues to the Court. First, the Court must determine whether prejudgment interest is warranted in

6

this case.  Second, if prejudgment interest is warranted, the Court must determine the appropriate interest rate.

### A. Prejudgment Interest Analysis

A trial court's decision to "'grant or deny prejudgment interest presents a question of law.'"  *Kraatz v. Heritage Imports*, 2003 UT App 201, ¶ 63, 71 P.3d 188 (citations omitted).  An award of prejudgment interest is appropriate where "'loss ha[s] been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages.'"  *Iron Head Const. Inc. v. Gurney*, 2009 UT 25, ¶ 11, 207 P.3d 1231 (citing *Bellon v. Malnar*, 808 P.2d 1089, 1097 (Utah 1991)).  To award prejudgment interest, "rel[ying] on the nature of the claim . . . is misplaced"—the "determining factor in awarding prejudgment interest is whether the damages upon which prejudgment interest is sought can be calculated with mathematical certainty."  *Shoreline Dev., Inc. v. Utah Cnty*, 835 P.2d 207, 211 (Utah App. 1992).

United Fire's damages can be "calculated with mathematical accuracy in accordance with well-established rules of damages"; therefore, United Fire is entitled to prejudgment interest.  *Iron Head Const. Inc.*, 2009 UT 25, ¶ 11.  Up until October 20, 2015, United Fire has "incurred defense costs on behalf of Chapman totaling $350,155.22."  (Dkt. No. 62, p. 2.)  United Fire's supporting affidavit by Robert Pierce outlines every fee incurred by United Fire.  (Dkt. No. 62-1.)  Pierce's affidavit separates United Fire defense costs vs. Cincinnati's defense costs according to the Court's 3/7ths allocation.

Further, Cincinnati has declined to contest the reasonableness of United Fire's defense costs and Cincinnati admits it is not likely to dispute the reasonableness of United Fire's fees in the future.  (Dkt. No. 69, p. 5, n.2.) (stating, Cincinnati "will likely not dispute the rates charged

by defense counsel or the reasonableness of defense counsel's fees"); *see Kraatz*, 2003 UT App 201, ¶ 65 (finding prejudgment interest on an award of attorney's fees is improper "where the reasonableness of those fees is in dispute"). Moreover, United Fire's claim is not unsettled; rather, United Fire's affidavit has shown it has paid Chapman's defense costs prior to the entry of judgment. *See Kraatz*, 2003 UT App 201, ¶ 77. Having determined United Fire is entitled to prejudgment interest, the Court must now determine what interest rate applies to United Fire's award.

### B. Applicable Rate of Prejudgment Interest

United Fire contends that Utah Code Ann. § 15-1-1(2) applies in this case. (Dkt. No. 60, p. 2.) Cincinnati counters that the fair market rate or the U.S. Prime rate is applicable because United Fire's Claims are equitable, not contractual. (Dkt. No. 69, p. 5.) The Court agrees with Cincinnati that the fair market rate applies to the Court's award, not § 15-1-1.

"'[A]n award of prejudgment interest simply serves to compensate a party for the depreciating value of the amount owed over time and, as a corollary, deters parties from intentionally withholding an amount that is liquidated and owing.'" *Iron Head Const. Inc.*, 2009 UT 25, ¶ 10 (citing *Trail Mountain Coal Co. v. Utah Div. of State Lands & Forestry,* 921 P.2d 1365, 1370 (Utah 1996)). Utah Code Ann. § 15-1-1(2) provides: "Unless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum." Many courts have declined to read § 15-1-1 narrowly; rather, if United Fire's claims are contractual, it is likely § 15-1-1(2) applies. *See Wilcox v. Anchor Wate, Co.*, 2007 UT 39, ¶ 44, 164 P.3d 353.

Section 15-1-1(2) is inapplicable because United Fire's claims are equitable, not contractual. In granting Plaintiffs' motion for summary judgment, the Court allocated

Chapman's defense costs to Cincinnati based on "equitable contribution." (Dkt. No. 58, p. 5.) The equitable contribution time-on-the-risk doctrine steps outside the original insurance contracts and equitably apportions defense costs between coinsurers. *See Ohio Cas. Ins. Co. v. Unigard Ins. Co.*, 2012 UT 1, ¶ 26, 268 P.3d 180. Importantly, United Fire and Cincinnati are not in contractual privity. United Fire's Transfer Provision gives United Fire certain rights with respect to Chapman's claims against Cincinnati; however, the Transfer Provision does not convert the Court's award in equity to a contractual damage award. Therefore, § 15-1-1(2) is inapplicable to United Fire's claims against Cincinnati.

United Fire argues that even if the proper rate of interest is not dictated by § 15-1-1(2), § 15-1-1(2) should apply because it "provides a strong indication of a reasonable interest rate under Utah law." (Dkt. No. 71, p. 6.) The Court disagrees and concludes the U.S. Prime Rate is the appropriate benchmark of prejudgment interest in this case. The Court finds that applying the U.S. Prime Rate fairly compensates United Fire for the losses it has incurred, while deterring Cincinnati from "intentionally withholding an amount that is . . . owing." *Irion Head Const. Inc.*, 2009 UT 25, ¶ 10 (internal citations and quotation marks omitted). Awarding United Fire 10% would unfairly compensate United Fire for waiting over three years to seek contribution from Cincinnati. Additionally, the prejudgment interest in this case accrued during a period of historically low interest rates. *See Owner-Operator Independent Drivers Assoc., Inc.*, Civ. No. 2:02-cv-950, 2013 WL 588893 (D. Utah Feb. 11, 2013) (applying the Treasury bill rate because the litigation occurred "during a period of historically low interest rates.").

United Fire's motion for entry of judgment and prejudgment interest is GRANTED. The Court directs United Fire to submit a proposed order of judgment consistent with this order.

## **<u>Conclusion</u>**

In sum, Defendant's Rule 59(e) motion (Dkt. No. 64) is DENIED. Plaintiffs' motions for attorney's fees (Dkt. Nos. 60, 61) are DENIED. United Fire's motion for entry of judgment and prejudgment interest (Dkt. No. 62) is GRANTED.

Dated: December 4, 2015.

                        BY THE COURT:

                        */s/ Dee Benson*

                        Dee Benson
                        United States District Judge